WESTERN DIST ARK...
FILED

MAR 2 2 2021

DOUGLAS F. YOUNG, Cl<br>
By

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF ARKANSAS**
**FORT SMITH DIVISION**


**DR. JACKIE CAVNER**                                                     **PLAINTIFF**

v.                                       CASE NO. _21-2069_

**UNIVERSITY OF ARKANSAS FORT SMITH,**                           **DEFENDANT**
**and the Board of Trustees of the University**
**of Arkansas**


**VERIFIED COMPLAINT**

COMES NOW, the Plaintiff, Jackie Cavner, by and through her attorneys Bradley Hull

and Travis Plummer, and for her Complaint states and alleges:

## I.      PARTIES AND JURISDICTION

1.      The Plaintiff, Dr. Jackie Cavner, is an individual who resides in the State of

Arkansas in Franklin County, Arkansas. Dr. Cavner has been a faculty member at the

University of Arkansas Fort Smith since 2010. She is presently an Assistant Professor.

Amongst her many degrees and certifications, Dr. Cavner has obtained a master's degree in

Nursing Education, and master's degree as an Advanced Practice Registered Nurse, and a

Doctor of Nursing Practice degree in Women's Health.

2.      Defendant, University of Arkansas Fort Smith and the Board of Trustees of the

University of Arkansas ("UAFS"), is a an Arkansas public university that is a political

subdivision of the State of Arkansas.

3.      The Plaintiff is employed by UAFS in Fort Smith, Arkansas in Sebastian County, Arkansas. This action arises from violations of federal law (Title VII of the Civil Rights Act) that occurred during the course of Plaintiff's employment with UAFS.

4.      Based on the foregoing, this Court has subject matter and personal jurisdiction over this action, and venue is proper herein.

## II.      BACKGROUND

5.      Plaintiff began her employment with UAFS in or around 2010 as an adjunct faculty member. Plaintiff subsequently became an Assistant Professor.

6.      During her tenure at UAFS, Plaintiff has routinely met and/or exceeded performance expectations. In addition to her classroom duties, she has had numerous publications and presentations, worked on research/grant projects, and been an active participant in various professional and community activities.

7.      Defendant has an agreement in which faculty and students from UAFS provide services at Mercy's facility in Fort Smith, Arkansas. Plaintiff regularly instructed students and provided patient care at Mercy Hospital in Fort Smith, Arkansas ("Mercy").

8.      On or about September 2018, Plaintiff was made aware of an incident involving her students while observing a physician at Mercy. The female students reported to Plaintiff that a physician had made an inappropriate sexual remark towards them during the course of an obstetric procedure. Specifically, the physician stated to the students while pinching the perineum area of a patient, "[I]f I pinched you there, you'd feel it." This statement was reported to Plaintiff as being made in a suggestive manner.

9.      Plaintiff promptly reported the incident and the physician's misconduct as a sexual discrimination/harassment violation – violating her employer's policies and various laws. The Plaintiff reasonably concluded that given the sexual nature of the statement, the context of when it was made (while touching the genitals of a patient), and the manner in which the statement was made in the physician's workplace would be a violation of both law and policy regarding sexual harassment.

10.     After making said report, Plaintiff began to experience retaliation and blowback that has continued since that date.

11.     The pattern of retaliation began when Plaintiff received harassing calls and communications from a physician at Mercy. She received a message from another Mercy physician on or around October 3, 2018. He stated that Plaintiff needed to call him right away to discuss "fairly serious matter" and he hoped Plaintiff wouldn't "be blamed for it." Plaintiff thought it must have been related to her students but discovered when she returned the call that he was discussing her report. The Mercy physician implied that it was a mistake for Plaintiff to make such a report; he indicated to Plaintiff that he wished she would have come to him and not made a report.

12.     Plaintiff then met with the second Mercy physician in his office. He again indicated that he regretted her not coming to him first and tried to downplay the situation.

13.     Plaintiff notified her superior at UAFS of the retaliatory conduct from the Mercy physicians, but to her knowledge no action was taken on her behalf.

14.     Plaintiff also learned that the same physician at Mercy requested that UAFS restrict the nursing students' ability to observe certain obstetric procedures. He told Plaintiff

that "because of this" we are not going to allow any UAFS students in delivery rooms and C Sections. When she came in two weeks later, the charge nurse told Plaintiff that they would not be allowed in the rooms; it was not cleared up for them to enter the rooms until later that day. This action was a direct harm/threat to Plaintiff and her students and upon information and belief an infringement on UAFS's contractual rights with Mercy.

15.     In or around November 2018, Plaintiff met her supervisor and with the Human Resource department at UAFS in order to discuss the ongoing retaliation issues. However, this did not resolve the issues. In fact, when the Dean of the College of Health Sciences for UAFS was informed of the situation her response was initially to allow Mercy to retaliate by keeping the students and Plaintiff from observing obstetric procedures.

16.     In or around December 2018, Plaintiff learned that she would be given an unreasonable and clearly undesirable Spring 2019 schedule. This schedule also contradicted a previous plan to teach Research, which had been suggested by the Associate Dean at UAFS based on the continuing hostile work environment at Mercy. UAFS inexplicably then informed Plaintiff that she lacked the qualifications to teach the Research in the Health Sciences online course. Notably, Plaintiff had greater educational credentials than previous instructors of this course; and she was allowed to teach the course in Fall 2019 (without obtaining any additional qualifications prior to that time). Plaintiff was required to teach health assessment labs for the majority of her hours; these labs were generally only assigned to new and adjunct faculty.

4

17.     In spring 2019, Plaintiff was unreasonably denied funding for a professional trip that would have reasonably been expected to receive approval; Plaintiff had to incur this expense out of pocket.

18.     In May 2019, Plaintiff requested a raise; this request was denied. Because of this denial, professors with shorter tenures (and less qualifications) were to make higher salaries than Plaintiff.

19.     Despite the retaliation that Plaintiff had already suffered for reporting misconduct; she continued to report misconduct where necessary. In April 2019, Plaintiff along with several other faculty members brought forth various grievances against her superior, the Dean of College of Health Sciences. During the course of these actions, Plaintiff submitted a FOIA request for information related to the faculty members' grievances.

20.     In 2019, Plaintiff sought appointment of the interim director position. She was nominated for the appointment by her fellow faculty members; however, she was not given the position. In November 2019 she was denied the position and at that time she was informed by her superior at UAFS, the Associate Dean of College of Health Sciences, that "the things you do in the past affect your future." The position instead went to an individual that had only recently begun working at UAFS, had the same or lesser qualifications, and had even been formally mentored *by* the Plaintiff.

21.     In or around December 2019, Plaintiff learned that she was denied an endowed professorship. The Plaintiff again was inexplicably given an unfounded excuse related to her qualifications. Plaintiff's superiors had previously informed her she would be qualified for the professorship and Plaintiff does as much or more scholarship than any other

faculty member. She still has not been given the professorship, even though the present Dean was one of the individuals that previously specifically told Plaintiff she was qualified for it.

22. In or around the beginning of the Fall 2019 semester, Plaintiff passed over for a promotion to the "Clinical Coordinator" position. UAFS gave this position to someone with less qualifications (fewer years' experience and master's degree only). While this position did not include an increase in pay; it offered a leadership position with other benefits including the increased opportunity for advancement, leadership experience, and a preferable schedule.

23. In or around Fall 2019, Plaintiff was passed over for Level Coordinator, which is an appointed position with higher pay. Again, UAFS instead appointed an individual to this position who had lesser qualifications than the Plaintiff.

24. In or around December 2019, Plaintiff learned from two other faculty members that when considering who to appoint as interim director, the Associate Dean of College of Health Sciences had asked various faculty members who had put forward the FOIA request (referenced above herein). When informed that it was believed to be the Plaintiff, the Associate Dean stated to a faculty member, "Well that ties my hands, I cannot appoint her."

25. The denial of these positions are part of a pattern of Plaintiff being unreasonably denied promotion and/or advancement opportunities for which she is more than qualified - often to lesser qualified candidates – since she reported misconduct.

26. Due to COVID Plaintiff planned to have an entirely online course load for Fall 2020 semester. This had been approved by UAFS and was preferable to Plaintiff as it allowed

her children to attend virtual school at home. She had made arrangements to have her children home based on this agreement. However, abruptly and unreasonably just one week prior to the beginning of the semester UAFS informed Plaintiff that she could not do so. UAFS pressured Plaintiff to either take a substantial pay cut by moving to adjunct professor or take on an additional advisor role that traditionally is a separate full-time position.

27.     The advisor position that UAFS initially had Plaintiff serve was traditionally a full-time role, and UAFS had not had someone handling the duties for several months (creating a backlog of issues). This position required Plaintiff to work with students for over twelve hours a day advising while still managing her normal teaching requirements. Plaintiff suffered physical illness and migraines from the stress put on her by this unreasonable obligation.

28.     UAFS could have simply offloaded hours from faculty that were over scheduled on their teaching obligations in order to ensure that Plaintiff had a reasonable/normal schedule. Plaintiff suggested this option upon the first indication of a problem by UAFS (one week prior to the semester). After Plaintiff endured the advisor role but it became clear even to UAFS such a position could not be sustainable; UAFS agreed with Plaintiff's initial proposal after all.

29.     Nonetheless, the community clinical course that Plaintiff was given had a student to teacher ratio of 17-1; normally this would be split to be considered two classes so that the instructor receives additional pay and additional teaching hours. UAFS did not do this for Plaintiff's class.

30.    UAFS was unreasonable in requiring Plaintiff to make a sudden, last minute change to her schedule, and the entire course of events evidences the manner in which Plaintiff has been targeted by her superiors.

31.    Plaintiff timely filed a charge against UAFS with the Equal Employment Opportunity Commission and received a right to sue notice from the Department of Justice. See Exhibit A attached hereto.

### III.    CLAIM AGAINST DEFENDANT

32.    The Plaintiff worked as an employee for the Defendant, and as such was protected from unlawful retaliation under Title VII of the Civil Rights Act.

33.    The Plaintiff engaged in protected activity under Title VII of the Civil Rights Act. The Plaintiff reported misconduct involving unlawful discrimination/harassment and she participated in the investigation of said matters. As a result of these actions by the Plaintiff, she has been targeted by her employer, and she has suffered numerous adverse employment actions. These adverse actions have had detrimental effects on her career, earnings, and well being.

34.    Title VII of the Civil Rights Act makes it unlawful to retaliate against an employee for opposing in good faith unlawful sexual discrimination.

35.    The Plaintiff has been subjected to unlawful retaliation that has included a hostile work environment, threats, intimidation, attempted coercion, harassment, failure to promote, undesirable work assignments/schedules, loss of advancement opportunities, and failure to make reasonable increase in wages.

36.     Plaintiff requests that the Court order the Defendant make her whole for the damages she has suffered. Plaintiff requests that she be given back pay for lost wages and benefits and compensatory damages in an amount sufficient to compensate her for her losses.

37.     The Plaintiff respectfully requests that the Plaintiff be awarded punitive damages in an amount sufficient to deter Defendant from similar misconduct.

38.     Plaintiff requests attorney's fees, costs, and the appropriate pre-judgment and post-judgment interest amount.

39.     Plaintiff requests injunctive relief enjoining the Defendant from further violations against her of the applicable laws.

40.     Plaintiff requests a trial by jury.

WHEREFORE, Plaintiff, Dr. Jackie Cavner, prays that this Court enter a judgement against the Defendants; for an award of compensatory and punitive damages against the Defendant in the maximum amount allowed for by law; for an award of post judgment interest at the maximum allowable rate under the law; for reasonable attorney fees and costs; and for any other relief for which Plaintiff may be entitled.

Respectfully submitted,
Dr. Jackie Cavner, Plaintiff

By:     /S/ BRADLEY HULL
        BRADLEY HULL, ABA # 2017126
        KEVIN HICKEY LAW PARTNERS
        502 Garrison Avenue
        Fort Smith, AR 72901
        P: (479) 434-2414
        F: (479) 434-2415
        brad@kevinhickeylaw.com

/S/ TRAVIS PLUMMER
TRAVIS PLUMMER, ABA #2019153
THE PLUMMER FIRM, PLLC
P.O. Box 175
Greenwood, AR 72936
P: (479) 252-6232
F: (479) 668-4783
*travisplum@theplummerfirm.com*

## CERTIFICATE OF SERVICE

I, Bradley Hull, hereby certify that on this 22 day of March 2021, that a true and correct copy of the foregoing was provided to the following:

Sarah L. James
Sjames@uasys.edu

Michelle Kaemmerling
mkaemmerling@wlj.com
Shelby Howlett
showlett@wlj.com

____ via U.S. Mail     ____ via Hand-Delivery       ____ via Facsimile       ✓ via Email

/S/ BRADLEY HULL
Bradley Hull

DocuSign Envelope ID: B396C5B3-797B-4319-8305-A4D27855A1B9

## VERIFICATION

I, Jackie Cavner, on this 22nd day of March , 2021, after first being duly

sworn, state on oath that the information contained in the above and foregoing document is

true and correct to the best of my knowledge, information, and belief.

DocuSigned by:

_Jackie Cavner_

4AF276D988CE4C9

**STATE OF ARKANSAS** )

)

**COUNTY OF** Sebastian )

## ACKNOWLEDGEMENT

I, hereby certify that on this 22nd day of March , 2021, before me

personally appeared Jackie Cavner proven or to me well known to be the person described

in and who executed the foregoing duly acknowledged before me, and that she executed the

same for the purpose therein expressed.

_Cathy Mizell_

04/20/2028                                    NOTARY PUBLIC

Cathy Mizell COMM. # 12704607
NOTARY PUBLIC
SEBASTIAN COUNTY, AR



U.S. Department of Justice

Civil Rights Division

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

**VIA EMAIL**

*150 M Street, N.E.*
*Karen Ferguson , EMP, 4CON, Room 9.514*
*Washington, DC 20530*

February 23, 2021

Dr. Jackie Cavner
c/o Bradley Hull, Esquire
Kevin Hickey Law Partners
502 Garrison Ave.
Fort Smith, AR  72901

Re:  EEOC Charge Against University of Arkansas at Fort Smith
     No. 493202000963

Dear Dr. Cavner:

   Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you through your attorney have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

   If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.

   The investigative file pertaining to your case is located in the EEOC Little Rock Area Office, Little Rock, AR.

   This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

                                        Sincerely,

                                        Pamela S. Karlan
                                  Principal Deputy Assistant Attorney General
                                        Civil Rights Division

                              by      /s/ Karen L. Ferguson
                                      Karen L. Ferguson
                                 Supervisory Civil Rights Analyst
                                 Employment Litigation Section

cc: Little Rock Area Office, EEOC
    University of Arkansas at Fort Smith

